UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LILIA BELKOVA RUSSO,

 Plaintiff,

v.            Case No: 5:26-cv-26-WWB-PRL

JUDGE JACOB A. BROWN, GLENN
KELLEY, JUDGE SARAH L.
SULMAN, CLERK OF COURT OF
PALM BEACH COUNTY, CLERK OF
4 DCA OF FLORIDA, FORTH
DISTRICT COURT OF APPEAL OF
FLORIDA, PALM BEACH COUNTY
SHERIFF'S OFFICE, J. LEVEY, and J.
SNIETKA,

 Defendants.

_____

**ORDER**

Plaintiff Lilia Belkova Russo, proceeding *pro se*, filed this suit in federal court pursuant to 42 U.S.C. § 1983 against a state court, clerks of court in state courts, state court judges, a bankruptcy judge, a sheriff's office, and law enforcement officers, alleging violations of her constitutional rights stemming from legal proceedings in state court and bankruptcy court. (Doc. 1). Plaintiff seeks to proceed in forma pauperis. (Doc. 2). For the reasons explained below, Plaintiff's Motion to Proceed in Forma Pauperis is taken under advisement, and in an abundance of caution, Plaintiff will be permitted to amend her complaint and the motion to proceed in forma pauperis.

## I.    BACKGROUND

Plaintiff, who resides in Morriston, Florida,[1] sues the Palm Beach County Sheriff's Office ("PBSO"); the Clerk of Court of Palm Beach County; the Fourth District Court of Appeal of Florida, located in West Palm Beach, Florida; the Clerk of the Fourth District Court of Appeal of Florida; Judge Glenn Kelley ("Judge Kelley") in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida ("Fifteenth Judicial Circuit"); Judge Sarah L. Shullman ("Judge Shullman") of the Fifteenth Judicial Circuit;[2] J. Snietka ("Snietka"), a law enforcement officer in the PBSO; J. Levey ("Levey"), a law enforcement officer in the PBSO; and Judge Jacob Brown ("Bankruptcy Judge Brown"), a United States Bankruptcy Judge in the United States Bankruptcy Court for the Middle District of Florida in the Jacksonville Division (collectively, the "Defendants"). (*See* Doc. 1).[3] In the jurisdiction section of her complaint, Plaintiff alleges that "[t]his action arises under 42 U.S.C. § 1983 for which this Court has jurisdiction." (*See id.* at p. 2).[4] Simultaneously with the filing of the complaint, Plaintiff filed a Motion to Proceed in Forma Pauperis. (Doc. 2).

The allegations levied by Plaintiff in this case center around real property located in Palm Beach County, Florida (the "Property"), which she claims constitutes her "homestead"

---

[1] Plaintiff indicates that Morriston is located in Marion County, Florida (*see* Doc. 1 at p. 2); however, Morriston is located in Levy County, Florida.

[2] Plaintiff names "Judge Sarah L. Sulman" as a defendant in this action. (Doc. 1 at p. 1); however, it appears that Plaintiff misspelled her last name, as it is listed as "Shullman" on the Fifteenth Judicial Circuit's website (https://www.15thcircuit.com/judges/shullman-sarah).

[3] Plaintiff also names Judge Danielle Sherriff ("Judge Sherriff") of the Fifteenth Judicial Circuit as a defendant. (*See* Doc. 1 at p. 3).

[4] Although Plaintiff's jurisdictional statement does not identify a federal question, construing the complaint liberally, it appears Plaintiff has invoked the jurisdiction of the Court under 28 U.S.C. § 1331 based upon her § 1983 claims. Because Plaintiff does not allege the amount in controversy exceeds $75,000, and it appears from the complaint that the Plaintiff and Defendants are citizens of Florida, Plaintiff fails to establish diversity jurisdiction under 28 U.S.C. § 1332.

and in which she asserts an ownership interest. (*See* Doc. 1 at pp. 3, 8, 10). As best can be discerned from the allegations in the complaint, Plaintiff's claims arise out of her dissatisfaction with legal proceedings in state court in Palm Beach County, Florida, and the United States Bankruptcy Court for the Middle District of Florida in Jacksonville, Florida, related to the Property. (*See generally* Doc. 1). Plaintiff asserts § 1983 claims against Defendants for alleged violations of her constitutional rights (Counts I and II), and a state law claim for a "[v]iolation of the homestead property protection" under the Florida Constitution (Count III). (*See id*. at pp. 9-12).

The basis for Plaintiff's claims is not entirely clear, nor is the involvement of each of the Defendants. Plaintiff alleges as follows:

> The Defendants deprived [her] of her [P]roperty and [r]ights while acting under 'color of state law[.]' The Defendants did not provide [her] with an adequate process for ejectment or for taking of her homestead [P]roperty and proceeds from sale of her homestead real property, for taking her personal property and the business assets of her mother[,] Anissa Nazarova (joint owner of the farm at the time), of which [Plaintiff] and Nazarova had possession and joint control as they were in possession of this farm at the time of these violations of her substantive rights, and conducting together with her mother family farm business on that farm as well as on other rural properties in Florida.

(*Id*. at p. 10). Plaintiff further alleges that:

> The 'taking' of the property and the sales proceeds from [her] homestead without due process to her also violated the homestead property protections that the Florida Constitution provides. [Plaintiff,] as the co-owner of the property and member of the HOA[,] was denied the right to pay the . . . post-petition assessments on the [P]roperty as provided by her Confirmed Chapter 12 Bankruptcy plan. The HOA governing documents did not allow [the] Association's attorneys['] fees to become a lien that can be foreclosed on the property. Attorneys' fees could only be a money judgment, which cannot be foreclosed on [a] homestead. Additionally[,] [Plaintiff] in her individual capacity was not sued for any damages and attorneys['] fees. Nor was she sued to foreclose her property rights or for ejectment. County Court does not have jurisdiction for an action of ejectment.

(*Id*. at p. 12). For relief, Plaintiff requests that the Court (1) "[i]ssue a declaratory judgment . . . that "Defendants deprived [Plaintiff] of property without due process of law"; (2) "a prospective injunction against further violation of Plaintiff's constitutional rights"; and (3) "a judgment for damages under 42 U.S.C. § 1983 for Defendants' violation of Plaintiff's civil rights, in an amount to be determined at trial." (*See id*. at pp. 12-13)

On January 27, 2026, the Court issued an Order to Show Cause directing Plaintiff to show cause why the case should not be transferred to the West Palm Beach Division of the United States District Court for the Southern District of Florida. (Doc. 5). In the Order to Show Cause, the Court noted that the Southern District of Florida appeared to be the proper venue for this action because eight of the nine Defendants were located in the Southern District of Florida (with only Bankruptcy Judge Brown located in the Middle District of Florida in Jacksonville), and most, if not all, of the alleged events giving rise to the action occurred in Palm Beach County, which is located in the Southern District of Florida. (*Id*. at p. 3). Plaintiff responded to the Court's Order to Show Cause, indicating that she filed suit in the Middle District of Florida because she resides in Morriston, Florida, which is "near Ocala," she is allegedly disabled, and she has "no funds and no income to be able to afford litigation in South Florida." (Doc. 8 at p. 6).[5]

Notably, shortly before filing this action, Plaintiff filed a separate action in this district against the Palm Beach County Clerk of Court, asserting substantially similar allegations and

---

[5] West Palm Beach is located in Palm Beach County, Florida. Palm Beach County is located in the Southern District of Florida. *See* 29 U.S.C. § 89(c). Morriston is located in Levy County, Florida. Levy County is located in the Northern District of Florida. *See id*. Jacksonville is located in Duval County, Florida. Duval County is located in the Middle District of Florida. *See id*.; M.D. Fla. Local Rule 1.04. Thus, Plaintiff resides in the Northern District of Florida, Bankruptcy Judge Brown resides in the Middle District of Florida, and the remaining eight defendants reside in the Southern District of Florida.

claims to those in the instant action. *See Russo v. Palm Beach County Clerk of Court*, No. 5:26-cv-15-SPC-PRL, at doc. 9 (M.D. Fla. Jan. 26, 2026) (dismissing case without prejudice after Plaintiff filed a Notice of Voluntary Dismissal Without Prejudice, which was self-executing).[6]

## II.   LEGAL STANDARDS

An individual may be allowed to proceed in forma pauperis if she declares in an affidavit that he is unable to pay such fees or give security therefor. *See* 28 U.S.C. § 1915(a)(1). However, before a plaintiff is permitted to proceed in forma pauperis, the Court is obligated to review the complaint to determine whether it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See id.* § 1915(e)(2). If the complaint is deficient, the Court is required to dismiss the suit *sua sponte*. *See id*.

In evaluating a complaint under § 1915, courts must liberally construe *pro se* filings and hold them to less stringent standards than papers drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But courts cannot act as counsel for plaintiffs or rewrite pleadings. *See United States v. Cordero*, 7 F.4th 1058, 1068 n.11 (11th Cir. 2021). *Pro se* litigants must still comply with the procedural rules applicable to ordinary civil litigation. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

Nevertheless, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[6] In the prior action, the Court issued an Order to Show Cause on January 12, 2026, directing Plaintiff to show cause why the action should not be transferred to the West Palm Beach Division of the United States District Court for Southern District of Florida, as the Palm Beach County Clerk of Court resided in Palm Beach County, Florida, which is located in the Southern District of Florida, and the alleged events giving rise to that action occurred in Palm Beach County. *See id*. at doc. 5 (M.D. Fla. Jan. 12, 2026).

544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *See id*. (quoting *Twombly*, 550 U.S. at 555). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests" and must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *See Twombly*, 550 U.S. at 555 (citations omitted). Although a court must accept as true well-pleaded allegations, it is not bound to accept a legal conclusion stated as a "factual allegation" in the complaint. *See id*.; *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (citations omitted); *Franklin v. Curry*, 738 F.3d 1246, 1248 n.1 (11th Cir. 2013) (per curiam) (stating that the court "afford[s] no presumption of truth to legal conclusion and recitations of the basic elements of a cause of action") (citations omitted).

Subject-matter jurisdiction is a threshold issue in any case pending in the United States District Court. Federal courts are courts of limited jurisdiction, which are "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *See Univ. of So. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). "[A] court must zealously [e]nsure that jurisdiction exists over a case, and should itself raise the question of

subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.,* 236 F.3d 1292, 1299 (11th Cir. 2001); *see Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."). This inquiry should be done at the earliest stage in the proceedings and *sua sponte* whenever subject matter jurisdiction may be lacking. *See Univ. of So. Ala.*, 168 F.3d at 410; *Fitzgerald*, 760 F.2d at 1251. If a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *See* Fed. R. Civ. P. 12(h)(3); *Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1261 (11th Cir. 2000) ("[O]nce a court determines that there has been no [jurisdictional] grant that covers a particular case, the court's sole remaining act is to dismiss the case for lack of jurisdiction.").

## III.   DISCUSSION

### A.  Failure to Comply with the Pleading Requirements in the Federal Rules of Civil Procedure

As a threshold matter, Plaintiff's complaint fails to comply with the pleading requirements set forth in Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8 requires that, among other things, the complaint set forth "a short and plain statement of the claim" demonstrating an entitlement to relief. *See* Fed. R. Civ. P. 8(a)(2). Each allegation in the complaint must be "simple, concise, and direct." *See* Fed. R. Civ. P. 8(d)(1). Rule 10 requires that a party "state its claims . . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances" and that each claim be stated in separate counts "[i]f doing so would promote clarity." *See* Fed. R. Civ. P. 10(b).

In this instance, Plaintiff's complaint does not contain a short and plain statement of the claim showing that she is entitled to relief as required by Rule 8(a)(2), nor does it set forth each allegation in separate, numbered paragraphs as required by Rule 10(b). *See* Fed. R. Civ. P. 8(a)(2), 10(b). Although Plaintiff is proceeding *pro se*, she is "still required to conform to procedural rules, and the court is not required to rewrite a deficient pleading." *See Washington v. Dep't of Child. & Fams.*, 256 F. App'x 326, 327 (11th Cir. 2007) (per curiam) (citation omitted).

Given that Plaintiff's complaint violates both Rules 8 and 10, it is an impermissible shotgun pleading. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (defining a "shotgun pleading" as a pleading that "violate[s] either Rule 8(a)(2) or Rule 10(b), or both"). The Eleventh Circuit has identified four basic categories of shotgun pleadings: (1) a complaint "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that fails to separate "each cause of action or claim for relief" into a different count; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *See id*. at 1321-23. Each of these types of pleadings fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *See id*. at 1323. The Eleventh Circuit has repeatedly condemned the use of shotgun pleadings. *See Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam). Indeed,

shotgun pleadings "exact an intolerable toll on the trial court's docket," among other things. *See Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997).

Plaintiff's complaint falls under the second and fourth categories of shotgun pleadings. First, Plaintiff's complaint contains conclusory, vague, and immaterial facts not obviously connected to a particular count. *See Johnson v. Georgia*, 661 F. App'x 578, 581 (11th Cir. 2016) (holding that a complaint "composed of long, rambling paragraphs and conclusory statements unsupported by factual allegations" was a shotgun pleading); *Giles v. Wal-Mart Distrib. Ctr.*, 359 F. App'x 91, 93 (11th Cir. 2009) (determining that a complaint "consist[ing] of a lengthy series of unnumbered paragraphs containing what amounts to a personal narrative suggesting, but not clearly and simply stating, a myriad of potential claims" was a "classic" shotgun pleading). Second, Plaintiff's complaint fails to connect each cause of action with any particular defendant. Specifically, in Counts I, II, and III of the complaint, Plaintiff does not identify which defendant is responsible for which acts or omissions. As a result, Plaintiff's complaint makes it virtually impossible for the Court to discern what claims Plaintiff asserts against each defendant and what role, if any, each defendant played in the alleged violations. *See Veltmann v. Walpole Pharmacy, Inc.*, 928 F. Supp. 1161, 1164 (M.D. Fla. 1996). Because Plaintiff's complaint constitutes an impermissible shotgun pleading, it fails to give the Defendants adequate notice of the claims asserted against them and the grounds upon which each claim rests. *See Weiland*, 792 F.3d at 1323.

### B. Improper Party to the Action

While Plaintiff names the PBSO as a defendant in the complaint (*see* Doc. 1 at p. 2), the PBSO is not a legal entity subject to suit under § 1983. Significantly, sheriff's departments are not a proper defendant because they are not a legal entity subject to suit. *See Dean v. Barber*,

951 F.2d 1210, 1214-15 (11th Cir. 1992) (stating that certain subdivisions of local or county governments, such as sheriff's departments and police departments, generally are not considered legal entities subject to suit) (citations omitted); *Faulkner v. Monroe Cnty. Sheriff's Dep't*, 523 F. App'x 696, 700-01 (11th Cir. 2013) (per curiam) (affirming dismissal of a civil rights action against the Monroe County Sheriff's Office and relying on Florida law to hold that a sheriff's office is not a legal entity subject to suit because "Florida law has not established Sheriff's offices as separate legal entities with the capacity to be sued"); *Spry v. Turner*, No. 8:11-cv-531-T-33TGW, 2011 WL 940343, at *2 (M.D. Fla. Mar. 17, 2011) (finding that Polk County Sheriff's Department was not a suable entity since "no provision is made constitutionally or statutorily for a 'Sheriff's Department' as a separate legal entity, as an agency of the county, or as a corporate entity, nor is a Sheriff's Department given authority to be sued in such a name") (collecting cases); *Acker v. City of Jacksonville*, No. 3:10-cv-984-J-34TEM, 2010 WL 4259356, at *1 (M.D. Fla. Oct. 25, 2010) ("The Jacksonville Sheriff's Office is not a proper party to the lawsuit because, under Florida law, the Sheriff's department is not a legal entity that can be sued.") (citations omitted). Thus, Plaintiff's claims against the PBSO in this action are improper.

### C. Subject-Matter Jurisdiction

Next, and perhaps most importantly, it appears that the Court lacks subject matter jurisdiction over Plaintiff's claims. Although Plaintiff attempts to plead artfully, it is obvious that she is simply unhappy with the state court rulings, orders, and/or judgments entered against her. While the procedural posture of the state court actions referenced in Plaintiff's complaint is unclear, to the extent that the state court proceedings have concluded, this Court would not be an available avenue to seek review because the *Rooker-Feldman* doctrine

precludes federal courts (other than the United States Supreme Court) from reviewing and rejecting final state court judgments or orders. *See, e.g.*, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) (explaining the *Rooker-Feldman* doctrine); *see also Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). "It is well-settled that a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision." *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997) (per curiam) (citations omitted). The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *See Exxon Mobil Corp.*, 544 U.S. at 284; *Behr v. Campbell*, 8 F.4th 1206, 1214 (11th Cir. 2021) (stating that the *Rooker-Feldman* doctrine "applies only when litigants try to appeal state court losses in the lower federal courts"). This jurisdictional bar "extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are 'inextricably intertwined' with a state court judgment" such that the federal court litigant is seeking to "effectively nullify" the state court judgment (directly or indirectly) or if it "succeeds[,] only to the extent that the state court wrongly decided the issues." *See Incorvaia v. Incorvaia*, 154 F. App'x 127, 128 (11th Cir. 2005) (per curiam) (quoting *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001)); *Coreno v. One W. Bank FSB*, 617 F. App'x 928, 930 (11th Cir. 2015) (per curiam) (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)); *see also Castro v. Lewis*, 777 F. App'x 401, 406 (11th Cir. 2019) (per curiam). Simply stated, "federal courts are not a forum for appealing state court decisions." *See Staley v. Ledbetter*, 837 F.2d 1016, 1018 (11th Cir. 1988) (per curiam) (citing *Feldman*, 460 U.S. at 482-86).

Plaintiff's complaint takes issue with several state court rulings, orders, and/or judgments relating to the Property. In essence, Plaintiff's complaint appears to be nothing more than an effort to have this Court nullify certain state court orders so that she can re-acquire the Property. (*See* Doc. 1 at pp. 12-13). To that end, Plaintiff's claims that Defendants violated her constitutional rights stemming from the state proceedings appear "inextricably intertwined" with any state court rulings, orders, and /or judgments, at least as Plaintiff describes them. As such, the *Rooker-Feldman* doctrine forecloses Plaintiff's efforts to use this action as a mechanism to review, reverse, or invalidate the state court's final decisions. *See Arthur v. JP Morgan Chase Bank, NA*, 569 F. App'x 669, 677 (11th Cir. 2014) ("Insofar as the [plaintiffs] seek to have their [foreclosure] judgment declared null and void by the district court . . ., such claim is barred by the *Rooker-Feldman* doctrine."); *AboyadeCole Bey v. BankAtl.*, No. 6:09-cv-1572-ORL-31GJK, 2010 WL 3069102, at *2 (M.D. Fla. Aug. 2, 2010) (finding that the court lacked jurisdiction to hear plaintiff's claims under the *Rooker-Feldman* doctrine because the case was, "at its core," an attempt by plaintiff to appeal the state court's decision permitting defendant to foreclose on her home). Indeed, this is the very sort of situation that the *Rooker-Feldman* doctrine was designed to eliminate. *See Bedasee v. Fremont Inv. & Loan Co.*, 741 F. App'x 642, 644 (11th Cir. 2018) (per curiam) ("Plaintiffs lost in state court and they now seek a do-over in federal court with the goal of having the district 'review and reject[ ]' the state court foreclosure judgment: an action that is exactly what the *Rooker-Feldman* doctrine prohibits.") (citation omitted). In short, Plaintiff is a "state-court loser[] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *See Exxon Mobil Corp.*, 544 U.S. at 284. Because Plaintiff essentially seeks to appeal her state court losses

- 12 -

with this Court, Plaintiff's claims are therefore likely barred by the *Rooker-Feldman* doctrine to the extent that any of the state court proceedings referenced in Plaintiff's complaint have concluded.

Moreover, to the extent Plaintiff is asking the Court to intervene in any ongoing state court proceedings, the Court would abstain from doing so under the *Younger* abstention doctrine. *See, e.g., Younger v. Harris*, 401 U.S. 37 (1971); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431-37 (1982) (explaining the application of the *Younger* abstention doctrine in the civil context). "*Younger* and its progeny reflect the longstanding national public policy, based on principles of comity and federalism, of allowing state courts to try cases—already pending in state court—free from federal court interference." *Butler v. Ala. Judicial Inquiry Comm'n*, 245 F.3d 1257, 1261 (11th Cir. 2001) (citation omitted).

Under the *Younger* abstention doctrine, "federal courts ordinarily must refrain from deciding the merits of a case when (1) there is a pending state judicial proceeding; (2) the proceeding implicates important state interests; and (3) the parties have an adequate opportunity to raise any constitutional claims in the state proceeding." *See Newsome v. Broward Cnty. Pub. Defenders*, 304 F. App'x 814, 816 (11th Cir. 2008) (per curiam) (citing *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432); *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (explaining that under the *Younger* abstention doctrine, federal courts will not interfere with certain state civil proceedings, including "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions") (citation omitted).

Upon consideration of these factors, the Court finds that abstention would be warranted to the extent that any of the state court proceedings referenced in Plaintiff's

complaint remain active and pending. *See McKinnon v. Wells Fargo Bank, N.A.*, No. 6:10-cv-325-ORL-28DAB, 2010 WL 731801, at \*1 (M.D. Fla. Mar. 1, 2010) (finding *Younger* abstention elements satisfied where ongoing state foreclosure proceedings "implicate important state interests" and "provide the plaintiff an adequate opportunity to litigate federal claims") (citation omitted); *Dixon v. Haworth*, No. 8:09-cv-1017-T-30EAJ, 2009 WL 4730546, at \*1 (M.D. Fla. Dec. 4, 2009) (explaining that plaintiffs "have the opportunity to raise their constitutional and evidentiary claims in the foreclosure actions, and appeal any rulings deemed improper"); *31 Foster Child. v. Bush*, 329 F.3d 1255, 1279 (11th Cir. 2003) (noting that a plaintiff has "the burden of establishing that the state proceedings do not provide an adequate remedy for their federal claims" and "[a] federal court 'should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary'") (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)); *see also Old Republic Union Ins. Co. v. Tillis Trucking Co., Inc.*, 124 F.3d 1258, 1261 (11th Cir. 1997) (explaining that *Younger* abstention applies to injunctions and declaratory judgments that would effectively enjoin state court proceedings).

### D. Immunity

Defendants Bankruptcy Judge Brown, Judge Kelley, Judge Shullman, the Clerk of Court of Palm Beach County, and the Clerk of the Fourth District Court of Appeal are immune from suit.

Judges enjoy absolute judicial immunity when they act in their judicial capacity as long as they do not act in the "clear absence of all jurisdiction." *See Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (per curiam) (citations and internal quotation marks omitted). This immunity is absolute—it applies even if the judge acts in error, with malice, or in excess

of their jurisdiction. *See id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)); *McCullough v. Finley*, 907 F.3d 1324, 1331 (11th Cir. 2018) (explaining that judicial immunity extends to all "judicial acts regardless of whether [the judge] made a mistake, acted maliciously [or corruptly], or exceeded his authority") (citation omitted). Whether a judge's actions were made while acting in their judicial capacity depends on whether: (1) the act was a normal judicial function; (2) the act occurred in chambers or open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose out of a visit to the judge in their judicial capacity. *See Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (per curiam).

Importantly, "[l]ike other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). To that end, judicial immunity also generally extends to demands for injunctive and declaratory relief. *See Bolin*, 225 F.3d at 1242; *Sibley*, 437 F.3d at 1073-74; *Tarver v. Reynolds*, 808 F. App'x 752, 754 (11th Cir. 2020) (per curiam) ("Alongside judicial immunity from damages, judges also receive protection from declaratory and injunctive relief."). For injunctive relief to be available, the court must determine whether the defendant violated a declaratory decree or whether declaratory relief was unavailable to the plaintiff. *See Tavares v. Schreiber*, No. 6:19-cv-1394-ORL-41EJK, 2019 WL 6683154, at *3 (M.D. Fla. Dec. 6, 2019); *Bolin*, 225 F.3d at 1242; *see also Sibley*, 437 F.3d at 1073-74. To receive declaratory relief, the plaintiff "must establish that there was a violation, that there is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." *See Sibley*, 437 F.3d at 1073 (quoting *Bolin*, 225 F.3d at 1242); *Tavares*, 2019 WL 6683154, at *4.

Here, the three judges—Bankruptcy Judge Brown, Judge Kelley, and Judge

Shullman—acted in their judicial capacity. Plaintiff alleges that the judges injured her through: (1) denying a hearing on a summary judgment motion, a motion for entry of default, and an "emergency" motion; (2) issuing an order deeming a pleading as an answer; and (3) denying her "the right to . . . pay post-petition assessments on the [P]roperty as provided by her Confirmed Chapter 12 Bankruptcy plan." (*See* Doc. 1 at pp. 6-8, 12). Plaintiff also states that the "[c]ourt foreclosed and sold the [P]roperty," although it is unclear which court specifically made these rulings. (*See id*. at p. 8). Nevertheless, these types of actions—ruling on motions and filings, deciding whether to hold a hearing, and controlling the docket—are quintessential judicial functions. *See Sibley*, 437 F.3d at 1070; *Wilson v. Bush*, 196 F. App'x 796, 799 (11th Cir. 2006) (per curiam) (finding that "[e]ntering a judgment or order is a quintessential judicial function and immunity attaches to it"); *McCree v Griffin*, No. 19-14646-A, 2020 WL 2632329, at *1-2 (11th Cir. May 20, 2020) (determining that a judge was entitled to absolute judicial immunity from monetary damages and injunctive relief where plaintiff alleged that the judge violated his constitutional rights by arbitrarily denying a motion). And all the alleged actions complained of appear to have been done when the judges were presiding over cases pending before them. As to Plaintiff's demand for injunctive relief (*see* Doc. 1 at p. 13), there is no indication that a declaratory decree was violated or that declaratory relief was unavailable to her. As for her request for declaratory relief (*see id*. at p. 12), Plaintiff's complaint is devoid of any allegations that there was an inadequate remedy at law through the state appeals process. *See Sibley*, 437 F.3d at 1074 (determining that the state appellate process is an adequate remedy at law); *see also Bolin*, 225 F.3d at 1243 (noting that in addition to appeals, a plaintiff may seek an extraordinary writ, such as a writ of mandamus). Thus, Bankruptcy Judge Brown, Judge Kelley, and Judge Shullman are entitled to judicial

immunity.

To the extent that Plaintiff sues the Clerk of Court of Palm Beach County and the Clerk of the Fourth District Court of Appeal, they would be entitled to absolute quasi-judicial immunity for the alleged actions taken within the scope of their authority. *See Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994) (explaining that absolute quasi-judicial immunity extends to nonjudicial officials who perform duties closely related to the judicial process and only for actions taken within the scope of their authority); *Darst v. Scriven*, No. 22-10918, 2023 WL 2401331, at *2 (11th Cir. Mar. 8, 2023) (per curiam) ("Clerks of the court have absolute immunity for a narrow range of acts 'they are specifically required to do under court order or at a judge's direction, and only qualified immunity for all other actions for damages.'") (quoting *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981)). For that matter, Plaintiff's complaint fails to allege sufficient facts that the Clerk of Court of Palm Beach County or the Clerk of the Fourth District Court of Appeal acted outside the scope of their authority as a court clerk in connection with the state court proceedings involving the Property. (*See* Doc. 1 at pp. 3-4, 8). Therefore, to the extent Plaintiff asserts any claims against the Clerk of Court of Palm Beach County or the Clerk of the Fourth District Court of Appeal, Plaintiff's claims against them would be barred by absolute immunity. *See, e.g.*, *Blough v. Nazaretian*, No. 8:16-cv-2587-MSS-MAP, 2016 WL 9631677, at *5 (M.D. Fla. Oct. 12, 2016), *aff'd*, 704 F. App'x 820 (11th Cir. 2017) (finding that court clerks were entitled to absolute immunity because they were acting under the direction of a judge or under the court's orders); *Shelters v. First Judicial Cir. Ct.*, No. 3:20-cv-5261-MCR-HTC, 2020 WL 4721836, at *3 (N.D. Fla. June 23, 2020), *report and recommendation adopted*, 2020 WL 4700764 (N.D. Fla. Aug. 13, 2020) (holding that a court clerk was entitled to judicial immunity for actions taken as part of the job working for

the judiciary).

Moreover, to the extent Plaintiff sues the Fourth District Court of Appeal, Plaintiff's claims against the Fourth District Court of Appeal are barred by the Eleventh Amendment. The Eleventh Amendment bars a suit against a state brought by a citizen of that state. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). "The [Eleventh] [A]mendment applies even when a state is not named as a party of record, if for all practical purposes the action is against the state." *Schopler v. Bliss*, 903 F.2d 1373, 1378 (11th Cir. 1990) (per curiam) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984)). This immunity from suit extends to "arms of the state," including state courts. *See Kaimowitz v. Florida Bar*, 996 F.2d 1151, 1155 (11th Cir. 1993) (per curiam) (quoting *Schopler*, 903 F.2d at 1378); *see Jallali v. Florida*, 404 F. App'x 455, 456 (11th Cir. 2010) (per curiam) (holding that the Fourth District Court of Appeal is protected by sovereign immunity); *see also Zabriskie v. Court Admin.*, 172 F. App'x 906, 908 (11th Cir. 2006) (per curiam) ("[U]nder Florida law, the judicial branch is a state agency. And the state court system—including employees of the circuit courts—is part of the judicial branch."). While it is not entirely clear whether Plaintiff sues the Fourth District Court of Appeal as a defendant in this action, as the Fourth District Court of Appeal is listed in the case caption but not under the "Parties" section in the complaint (*see* Doc. 1 at pp. 1-3), the Fourth District Court of Appeal is entitled to Eleventh Amendment immunity from suit because it is an arm of the State of Florida.

### E.  42 U.S.C. § 1983

The sole legal basis for Plaintiff's complaint filed in federal court is 42 U.S.C. § 1983. (*See* Doc. 1). A civil action under § 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the

United States." *See Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (quoting 42 U.S.C. § 1983). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979) (internal quotations omitted)).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law; and (2) that such a deprivation occurred under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998) (citation omitted); *see also Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) ("Section 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right.") (citing *Paul v. Davis*, 424 U.S. 693, 698-99 (1976)). In addition, for liability under § 1983, a plaintiff must allege "an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." *See Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam) (citation omitted); *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 999 (11th Cir. 1995). "More than conclusory and vague allegations are required to state a case of action under 42 U.S.C. § 1983." *Hannah v. Union Corr. Inst.*, No. 3:12-cv-436-J-20JBT, 2012 WL 1413163, at *1 (M.D. Fla. Apr. 23, 2012) (citations omitted); *see Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). "[I]n the absence of a federal constitutional deprivation or violation of a federal right, [a] [p]laintiff cannot sustain a cause of action against the [d]efendant under 42 U.S.C. § 1983." *Hannah*, 2012 WL 1413163, at *1.

Here, as pleaded, Plaintiff has failed to set forth sufficient facts to state a plausible claim for relief against Defendants (namely Levey and Snietka) under § 1983. Even if the Court were to presume Plaintiff sufficiently alleged violations of a federal right (which she has

not), she has proffered no factual allegations directly connecting Levey and Snietka to the alleged violations. For that matter, it is not clear how Levey and Snietka were involved in this matter. Thus, even construing her allegations liberally, Plaintiff's complaint fails to state a claim under § 1983.

### F. Venue

Venue for actions under 42 U.S.C. § 1983 is governed by 28 U.S.C. § 1391(b), which provides that venue in a civil action is proper only in (1) the district where any defendant resides, if all defendants reside in the same state in which the district is located; (2) in a district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) in a district in which any defendant may be found, if there is no district in which the action may otherwise be brought. *See* 28 U.S.C. § 1391(b).

However, "[f]or the convenience of parties and witnesses, [and] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." *See* 28 U.S.C. § 1404(a); *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns*, 689 F.2d 982, 992 n.16 (11th Cir. 1982) (explaining that § 1404(a) "governs actions brought in an inconvenient venue"); *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) ("[T]he purpose of [§ 1404(a)] is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.") (internal quotation marks omitted); *cf.* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). Under § 1404(a), "[a] district court may *sua sponte* transfer a civil action to any other district

- 20 -

where it might have been brought if doing so will be convenient for the parties and witnesses and serve the interest of justice." *See Nalls v. Coleman Low Fed. Inst.*, 440 F. App'x 704, 706 (11th Cir. 2011) (per curiam) (citing *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011)); *see also Tazoe*, 631 F.3d at 1336 ("Before transferring *sua sponte* under section 1404(a), the [court] should . . . issue an order to show cause why the case should not be transferred, and thereby afford the parties an opportunity to state their reasons.") (citation omitted); *Lipofsky v. New York State Workers Comp. Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988) (stating that a district court may raise the issue of defective venue *sua sponte*, but "the court may not dismiss [the action] without first giving the parties an opportunity to present their views on the issue") (citation omitted).

District courts have broad discretion in determining whether to transfer a case to another district for the convenience of the parties and witnesses, and in the interests of justice under § 1404(a). *See England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988) (citation omitted); *Am. Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc.*, 55 F. Supp. 2d 1347, 1351 (M.D. Fla. 1999) (stating that the standard for transfer under § 1404(a) gives broad discretion to the trial court) (citation omitted); *Roofing & Sheet Metal Servs., Inc.*, 689 F.2d at 985 (indicating that the decision to transfer an action is left to the "sound discretion of the district court") (citations omitted); *see also Vivant Pharms., LLC v. Clinical Formula, LLC*, No. 10-21537-CIV, 2011 WL 1303218, at *6-7 (S.D. Fla. Mar. 31, 2011) (discussing the two-step analysis under § 1404(a) to determine the propriety of transfer to another district).

The Court is indeed mindful of the considerable weight accorded to a plaintiff's choice of forum. *See Response Reward Sys., L.C. v. Meijer, Inc.*, 189 F. Supp. 2d 1332, 1339 (M.D. Fla. 2022) ("In determining the propriety of transfer, the Court must give considerable weight to

[p]laintiff's choice of forum. . . . Only if the [p]laintiff's choice is clearly outweighed by considerations of convenience, cost, judicial economy, and expeditious discovery and trial process should this Court disregard the choice of forum and transfer the action.") (citations omitted); *see also In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (per curiam) ("[F]ederal courts traditionally have accorded a plaintiff's choice of forum considerable deference.").

Plaintiff's complaint does not meaningfully involve events and/or omissions that have taken place in the Middle District of Florida. Most, if not all, of the factual allegations underpinning Plaintiff's claims occurred in Palm Beach County, which is located in the Southern District of Florida. The majority of the acts and occurrences of which Plaintiff complains appear to have occurred in the Southern District of Florida, where eight of the nine Defendants are located.[7] To substantiate her claims, Plaintiff relies heavily on events that involve the eight defendants located in the Southern District of Florida (*see* Doc. 1 at pp. 3-9), which would make the Southern District of Florida more convenient for those witnesses to travel to if required to give testimony and appear in court. Although Plaintiff briefly and vaguely mentions her bankruptcy case in the complaint (*see id*. at pp. 7, 12), she does not allege that such events occurred in the Middle District of Florida (or in the Ocala Division), nor does she allege that any other events and/or omissions occurred in the Middle District of Florida.

However, in light of all the other deficiencies noted above, transferring this matter to the Southern District of Florida would serve no useful purpose and constitute a waste of limited judicial resources. As the interest of justice would therefore not be furthered by transfer

---

[7] It also bears consideration that Judge Danielle Sherriff resides in the Southern District of Florida.

at this time, the Court will instead take Plaintiff's Motion to Proceed in Forma Pauperis under advisement, allowing Plaintiff to file an amended complaint and an amended motion to proceed in forma pauperis (see more below) to address the issues identified herein.

### G. Motion to Proceed in Forma Pauperis

Plaintiff's Motion to Proceed in Forma Pauperis (Doc. 2) is deficient and incomplete because she did not use the proper form. Consequently, the motion lacks the requisite information and detail to determine if she is indigent, as she did not answer several pertinent questions or provide an explanation for her inability to do so.

The Court will allow Plaintiff to file an amended motion to proceed in forma pauperis so that she can provide the Court with sufficient information to determine whether she is indigent. As such, Plaintiff must complete the "Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form)" from the Court's website (https://www.uscourts.gov/forms/fee-waiver-application-forms/application-proceed-district-court-without-prepaying-fees-or).

### H. Amendment

In an abundance of caution, the Court will allow the Plaintiff an opportunity to file an amended complaint to clarify the basis of her claims and the jurisdiction over them. Plaintiff must provide the Court with sufficient information and in a coherent manner so that it can perform the review required under § 1915. The amended complaint must clearly state the legal theory or theories upon which Plaintiff seeks relief and explain with factual allegations how each defendant is responsible. Additionally, the amended complaint must clearly state the basis for the Court to exercise jurisdiction over Plaintiff's claims. Plaintiff should carefully consider whether she can allege a claim in good faith because pursuing frivolous claims could

lead to the imposition of sanctions.

Plaintiff is cautioned that, despite proceeding *pro se*, she is required to comply with this Court's Local Rules, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence. Plaintiff may obtain a copy of the Local Rules from the Court's website (http://www.flmd.uscourts.gov) or by visiting the Office of the Clerk of Court. Additionally, resources and information related to proceeding in court without a lawyer, including a handbook entitled "Guide for Proceeding Without a Lawyer," can be located on the Court's website (http://www.flmd.uscourts.gov/pro_se/default.htm). Plaintiff should also consult the Middle District of Florida's Civil Discovery Handbook for a general discussion of this District's discovery practices (http://www.flmd.uscourts.gov/civil-discovery-handbook).

## IV.    CONCLUSION

Accordingly, Plaintiff's Motion to Proceed in Forma Pauperis (Doc. 2) is **TAKEN UNDER ADVISEMENT**. Plaintiff shall file an amended complaint and an amended motion to proceed in forma pauperis on or before **May 26, 2026**. The amended complaint must comply with all pleading requirements contained in Rules 8, 9, 10, and 11 of the Federal Rules of Civil Procedure and those contained in the Local Rules of the Middle District of Florida. Failure to comply with this Order may result in a recommendation that this action be dismissed for failure to prosecute.

**DONE** and **ORDERED** in Ocala, Florida on April 28, 2026.

PHILIP R. LAMMENS
United States Magistrate Judge

- 24 -

- 25 -

Copies furnished to:

Counsel of Record
Unrepresented Parties